**RIDGLEA ESTATE CONDOMINIUM ASSOCIATION, Plaintiff,**

v.

**LEXINGTON INSURANCE COMPANY, Defendant.**

No. 4:03–CV–302–A.

United States District Court, N.D. Texas, Fort Worth Division.

March 17, 2004.

Russell Joseph Bowman, Scott Bowman & Stella, Dallas, TX, for plaintiff.

M. Jarrett Coleman, Cozen O'Connor, Dallas, TX, for defendant.

## MEMORANDUM OPINION and ORDER

MCBRYDE, District Judge.

Before the court for decision are the motion of plaintiff, Ridglea Estate Condominium Association, ("Ridglea") for partial summary judgment and the motion of defendant, Lexington Insurance Company, ("Lexington") for summary judgment. For the reasons set forth below, the court has concluded that Ridglea's motion should be denied and that Lexington's should be granted except as to its request for recovery of attorneys' fees.

## I.

### Nature of the Litigation

This is an action by Ridglea against Lexington for recovery of insurance policy benefits based on damages allegedly suffered by Ridglea's buildings as a result of a severe hailstorm that occurred on May 5, 1995. Lexington provided physical damage insurance coverage from February 1, 1995, to February 1, 1996, for Ridglea's buildings. In addition to seeking recovery of contractual benefits under the policy, Ridglea seeks recovery of ancillary benefits based on alleged violations by Lexington of Texas statutes and common law related to obligations of an insurance company to its insured in the event of a loss.

Among Lexington's defenses is that Ridglea failed to give it timely notice of the alleged hail damage loss, having first given the insurance company any notice of the loss in late 2001, more than six years after the hail damage occurred. Ridglea alleges several reasons why its failure to give notice at an earlier date does not adversely affect its claims. Other issues raised by the pleadings of the parties will be discussed later as necessary.

The court has subject matter jurisdiction because of diversity of citizenship and amount in controversy. Texas substantive law controls the outcome.

## II.

### The Pending Motions

#### A. Ridglea's Motion.

Ridglea's motion for summary judgment seeks rulings and declarations that Lexington cannot successfully rely as a defense on the failure of Ridglea to give earlier notice of the alleged hail damage loss because, Ridglea asserts, (a) the notice requirement in the insurance policy is void because of § 16.071 of the Texas Civil Practice and Remedies Code, (b) the policy notice requirement is ambiguous, and must be construed in a manner favorable to Ridglea, such that it would not preclude Ridglea's claim, and (c) Lexington waived compliance with the notice requirement by denying Ridglea's claim without asserting noncompliance with the notice requirement as a reason for the denial.

#### B. Lexington's Motion.

Lexington seeks a summary adjudication dismissing Ridglea's claims in their entirety. One of the grounds of Lexington's motion is that, if there was hail damage resulting from the May 5, 1995, hailstorm, it would not be covered under Lexington's policy if it did not manifest itself before the policy expired on February 1, 1996. The main ground of Lexington's motion is that Ridglea cannot recover because of having failed to comply with the notice requirements of the insurance policy. Ridglea has responded by asserting that the summary judgment evidence establishes that the damage did manifest itself before February 1, 1996, and by relying, in avoidance of the insurance policy's notice requirement, on the theories urged by Ridglea in support of its motion for partial summary judgment. Ridglea adds that Lexington cannot successfully assert a late notice defense, because it cannot show that it was prejudiced by Ridglea's failure to give notice at an earlier date.

## III.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing

that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons,* 746 F.2d 265, 269 (5th Cir.1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,*

475 U.S. at 597, 106 S.Ct. 1348. *See also Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

## IV.

### Analysis

A. *Notice Defense Issues.*

The insurance policy contains the following notification requirements:

> You must see that the following are done in the event of loss or damage to Covered Property:
>
> \*   \*   \*   \*   \*   \*
>
> b. Give us prompt notice of the loss or damage. Include a description of the property involved.
>
> c. As soon as possible, give us a description of how, when and where the loss or damage occurred.[1]

Ridglea's App. at 36. Another provision says that no one may bring a legal action against Lexington unless there has been full compliance with all of the terms of the applicable coverage part (which includes the notice provisions mentioned above). *Id.* at 13.

1. *Effect, If Any, of § 16.071(a) on Notice Requirements.*

■ The primary controversy over the notice requirements arises from the provisions of § 16.071(a) of the Texas Civil Practice and Remedies Code, which reads:

> A contract stipulation that requires a claimant to give notice of a claim for damages as a condition precedent to the right to sue on the contract is not valid

---

**1.** The word "you" as used in the policy has reference to Ridglea; the word "us" has reference to Lexington. Ridglea's App. at 43.

unless the stipulation is reasonable. A stipulation that requires notification within less than 90 days is void.

Before this statutory provision was incorporated into the Texas Civil Practice and Remedies Code it was in a separate section of the Texas statutes, which read, in relevant part, as follows:

No stipulation in a contract requiring notice to be given of a claim for damages as a condition precedent to the right to sue thereon shall ever be valid unless such stipulation is reasonable. Any such stipulation fixing the time within which such notice shall be given at a less period than ninety (90) days shall be void
. . . .

TEX. REV. CIV. STAT. of 1925, art. 5546(a). Article 5546(a) was, in turn, preceded by article 5714 of the Texas Revised Civil Statutes of 1911, which, in turn, was preceded by article 3379 of the Texas Revised Statutes of 1895, as amended 1907. Certain of the court decisions that guide the court's rulings are based on an earlier version of the statute. Although there are slight differences in the wording of the versions of the statute, they are substantially identical. When used in this opinion, the words "the statute" have reference to whichever version of the statute under discussion applies to the case under discussion.

The court has not found a Texas Supreme Court decision directly on point on the question as to the effect, if any, of § 16.071(a) on the insurance policy notice requirements. Therefore, the court must make an "Erie² guess" as to the ruling the Texas Supreme Court would make if directly confronted with the issue. See Rogers v. Corrosion Prods., Inc., 42 F.3d 292, 295 (5th Cir.1995); Jackson v. Johns–Manville Sales Corp., 781 F.2d 394, 396–97 (5th Cir.1986). While decisions of intermediate appellate courts of Texas "should be given some weight, [ ] they are not controlling where the highest state court has not spoken on the subject." Rogers, 42 F.3d at 295. Rather, the court is obligated to make its best effort to predict how the Texas Supreme Court would decide the issue. Batts v. Tow–Motor Forklift Co., 66 F.3d 743, 750 (5th Cir.1995). "Erie and its progeny require no more of a federal court than conscientiously to satisfy its duty to predict how the state court will decide a question." Id. However, if a panel of the Fifth Circuit has settled on the state law to be applied in a diversity case, that precedent should be followed "absent a subsequent state court decision or statutory amendment that rendered [the Fifth Circuit's] prior decision clearly wrong." Id. at 747.

Fortunately, the Texas Supreme Court has now rendered decisions that, when considered in context with principles announced in earlier Supreme Court decisions, make quite clear that the Supreme Court would hold that Lexington's notice provisions are not within the scope of § 16.071(a). The court is satisfied that, if directly confronted with the issue, the Texas Supreme Court would hold that the notice provisions in question do not pertain to a "claim for damages," but merely are requirements that the insured give the insurance company notice of a potentially covered event so that the insurance company might be able to promptly conduct an investigation of the event.

One of the recent decisions is American Airlines Employees Federal Credit Union v. Martin, 29 S.W.3d 86 (Tex.2000). The notice provision at issue there, which was in a bank deposit agreement, required that notice of objection to any item shown on a statement of the account must be made before the sixtieth day following the date the statement was mailed in order to avoid

2. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

waiver of the objection. A contention of the bank customer/plaintiff was that the notice requirement was unenforceable because it violated the statute. The court rejected that contention, holding that the statute "by its terms does not apply here, when the notice to be given is not notice of a claim for damages, but rather notice of unauthorized transactions." *Martin*, 29 S.W.3d at 97. The court took into account the purpose of the notice requirement in its evaluation of whether the statute applied. *Id.* at 97–98.

In support of its ruling in *Martin*, the Supreme Court cited its 1982 decision in *St. Paul Mercury Insurance Co. v. Tri–State Cattle Feeders, Inc.*, 638 S.W.2d 868 (Tex.1982), *id.* at 97 n. 62, a case in which the Court disapproved the holding of an intermediate Texas appellate court invalidating, under authority of the statute, a notice of loss provision in a theft insurance policy. By way of explanation, the Court said that the "notice provision in the present theft policy is not a 'notice of claim for damages' under" the statute. *St. Paul Mercury Ins. Co.*, 638 S.W.2d at 869. In 2002 the Texas Supreme Court in *Community Bank & Trust v. Fleck*, 107 S.W.3d 541, 542 (Tex.2002), reaffirmed its *Martin* ruling.

The Texas Supreme Court rulings mentioned above are consistent with, and compelled by, the earlier ruling of that court in *Commercial Standard Insurance Co. v. Harper*, 129 Tex. 249, 103 S.W.2d 143 (1937), where the Court, by adoption of an opinion of the Texas Commission of Appeals, held that a provision in an automobile theft policy requiring that the insured give immediate notice to the insurance company of loss or damage did not violate the statute. In support of its ruling, the Court quoted with approval from Cooley's Briefs on Insurance (2d Ed.) vol. 8 (Supplement) p. 874, as follows:

Notice that an automobile had been stolen is not 'notice of a claim for damages' as that term is used in a statute providing that any stipulation fixing the time within which notice of a claim for damages shall be given at a less period than 90 days shall be void. It is only notice of the happening of an event upon which liability may or may not result, dependent upon its being given in manner and within the time stipulated for its delivery in the contract entered into between the parties for such delivery. It is apparent that the very purpose for contracting for the notice by [the insurer] was to give it an opportunity to take steps to recover the automobile in case it was stolen. To disregard the distinction between a notice that a car has been stolen and notice of a claim for damages is to seriously infringe upon the common-law right of contract and to virtually destroy contracts entered into insuring automobiles.

103 S.W.2d at 145.

Instructive is language used by the Texas Commission of Appeals in *Burns v. American National Insurance Co.*, 280 S.W. 762 (Tex. Comm'n App.1926, judgm't adopted). The question there was whether the statute applied to notice requirements in an accident insurance policy. The Commission described the determinative issue to be "the true construction of the phrase 'claim for damages,'" as used in the statute. *Burns*, 280 S.W. at 764. Explanations given by the Commission provide rationale for the Texas Supreme Court decisions that mere notice of an event does not come within the statute:

Before one has any "claim for damages" whereby he can give to another notice thereof, there must be in existence provable facts of a cause of action in his favor against the other; ....

Damages are a sum awarded to one

because another has wrongfully invaded his rights contrary to agreement or contrary to law; and where one claims damages under the terms of a written contract in the execution of which there is no allegation that it was executed through fraud, accident, or mistake, he must stand upon the contract as written, and allege and prove that without fault or negligence on his part the other party to the contract has breached it, showing that on account of such breach the complaining party has been damaged in a sum which can be ascertained.

. . . . .

... In other words, before there can be a "claim for damages" within the meaning of the statute, there must be made a prima facie case by the pleading and proof that the contract upon which the suit is based had been breached by the party against whom the claim is made.

*Id.* at 764–65.

Under the Texas Supreme Court decisions now on the books, there is no doubt that notice provisions of the kind contained in Lexington's policy are outside the scope of § 16.071(a). There is no reasonable basis for a contention that the notice provisions require Ridglea "to give notice of a claim for damages." Rather, the only reasonable reading of the notice requirements is that Ridglea must give the insurance company notice of an event—loss or damage to the insured property—together with details of the event so that the insurance company might promptly investigate to determine whether the alleged loss or damage is covered by the terms of the insurance policy and the extent of the damage to the property.

Potentially applicable is the 1963 decision of the Fifth Circuit in *Round Rock Independent School District v. First National Insurance Co. of America*, 324 F.2d 280 (5th Cir.1963). While expressing misgivings, the Fifth Circuit panel concluded that notice of loss requirements, similar to Lexington's, in a fire and explosion policy were covered by the statute. The panel explained:

If we were writing on a clean slate we might decide the question differently, but constrained as we are by the Erie doctrine, we are bound to hold that the best evidence of the Texas law as presently stated in the decisions of the courts of that State is that the requirement of "immediate notice of any loss" is void under Article 5546, Vernon's Annotated Texas Civil Statutes.

*Round Rock Indep. Sch. Dist.*, 324 F.2d at 284. The "decisions of the courts of [Texas]" to which the panel referred included only one opinion of the Texas Supreme Court. The others were a collection of opinions of courts of civil appeals and the Commission of Appeals in which conflicting results had been reached. *Id.* at 283–84 nn. 2–6. Had the Fifth Circuit panel enjoyed the benefit of the 1982, 2000, and 2002 Texas Supreme Court decisions mentioned above, *supra* at 855–57, it, upon reading them in the context of the principles previously announced by the Texas Supreme Court, clearly would have decided that the statute did not apply to the notice requirements there at issue.

For the reasons stated, the court concludes that the notice provisions in the policy issued by Lexington to Ridglea are not affected by § 16.071(a).

2. *Ridglea Failed to Comply With the Policy's Notice Requirements.*

■ The court concludes that there is nothing ambiguous about the notice requirement that would allow it to be construed in a manner that would not preclude Ridglea's claim. Furthermore, Texas law compels the conclusion that the "prompt notice" and "as soon as pos-

sible" language in the notice requirements means within a reasonable time from the occurrence of the event causing the loss or damage, *i.e.*, in this instance the severe hailstorm.[3] *See, e.g., Stonewall Ins. Co. v. Modern Exploration, Inc.*, 757 S.W.2d 432, 435 (Tex.App.—Dallas 1988, no writ).

Of course, Texas law does not contemplate that Ridglea would be required to give notice before it had a reasonable opportunity to ascertain that its buildings suffered hail damage. The summary judgment record in this case establishes as a matter of law that if Ridglea suffered the degree of hail damage it claims to have suffered as a result of the May 5, 1995, severe hailstorm, it could and should have discovered the damage shortly after the storm occurred, certainly within a few months of the occurrence of the storm. Ridglea's own expert establishes the obvious nature of the damage. He said that an inspection of the roofs reveals that the hail hits on the roofs were up to three inches and greater in size. Ridglea's 2d App. at 131. The expert said that his examination of the roofs of the buildings in early 2002 showed extensive hail damage to the buildings that was caused by the May 5, 1995, storm, which involved hailstones up to four inches or greater. *Id.* at 132. The record contains evidence that there was severe automobile damage from hail in the area of Ridglea's buildings on May 5, 1995. These items of summary judgment evidence are only samplings of the evidence in the summary judgment record that would lead to the conclusion that, if the damage to which Ridglea now refers was sustained on May 5, 1995, a reasonable insured would have discovered, and reported, the existence of the roof damage shortly after the hailstorm occurred. The size of the hailstones, without more, would indicate a need for an immediate inspection of the roofs for damage. Even the extent of the damage Ridglea asserts, as measured by the claimed $450,000.00 cost of repair, Lexington's App. at 159, belies Ridglea's claim that it had no occasion to discover the damage for more than six years. Common sense dictates that if damage of that magnitude was sustained, Ridglea would, or should, have been aware of the damage at the time. The fact that Ridglea's management may have been negligent with respect to discovery of the damage, or may have engaged in subsequent activities to blame the damage on later-occurring storms (perhaps as a cover-up for earlier negligence), does not work to Ridglea's benefit on the notice issue.[4]

No rational finder of fact could conclude from the summary judgment evidence that Ridglea reported the hail loss and damage

3. The court notes that even if the court had found that the notice requirements in the insurance policy were subject to § 16.071(a), the outcome would be the same because "[t]he absence of a valid notice provision invokes a reasonable notice standard of not less than 90 days." *St. Paul Mercury Ins. Co. v. Tri–State Cattle Feeders, Inc.*, 628 S.W.2d 844, 846 (Tex.App.—Amarillo), *writ ref'd n.r.e.*, 638 S.W.2d 868 (Tex.1982) (per curiam opinion disapproving of the ruling of the Court of Appeals that the statute voided the notice requirement in the insurance policy at issue there).

4. Before Ridglea reported hail damage to Lexington in late 2001, it made a claim based on the same damage against another insurance company under a policy that was in effect from February 1, 2001, to February 1, 2002. Lexington's App. at 156–57. Also puzzling is the evidence that the roof on at least one of the buildings was replaced in 1996, Ridglea's 2d App. at 260, at which time hail damage resulting from the May 5, 1995, hailstorm would have been observable. And, there is summary judgment evidence that the roofs of several of the buildings were inspected in early 1999, apparently related to complaints that roof repairs done at an earlier date were not satisfactory. *Id.* at 190–258.

to its buildings within a reasonable time after it was suffered (if one were to assume that the damage of which Ridglea now complains was caused by the severe May 5, 1995, hailstorm). The only rational finding that could be made is that more than a reasonable time passed before Ridglea notified Lexington in late 2001.

### 3. *There Was No Waiver of the Notice Requirements.*

■ Ridglea maintains that Lexington cannot assert noncompliance with the notice requirements as a defense because Lexington did not give noncompliance as a reason for rejecting the claim when it was first presented to Lexington in late 2001. There is no evidence in the summary judgment record that would support a finding that Lexington waived its right to assert as a defense the failure of Ridglea to comply with the policy notice requirements.

■ Moreover, upon being notified in late 2001 of Ridglea's claim that it suffered hail damage on May 5, 1995, Lexington took from Ridglea what commonly is referred to in the insurance industry as a non-waiver agreement, which, in effect, said that the insured agreed that action taken by the insurance company in connection with investigating Ridglea's report of loss would not waive or invalidate any of the terms or conditions of the insurance policy. Lexington's App. at 152. Such an agreement shields an insurance company from a claim by the insured that the insurance company has waived its right to defend a claim on the basis of non-compliance with policy requirements. *See Round Rock Indep. Sch. Dist.*, 324 F.2d at 285–286. The facts that must exist for there to be a finding of waiver against an insurance company simply are not raised by the summary judgment record. *See id.* at 284–85.

### 4. *Compliance With the Notice Requirements Was a Condition Precedent to Recovery by Ridglea.*

■ As previously noted, the policy provides that Ridglea may not bring a legal action against Lexington unless there has been full compliance with all applicable policy terms. *Supra* at 854. Ridglea has conceded, indeed advocated, throughout that compliance with the notice requirements were conditions precedent. *See* Lexington's App. at 160; Ridglea's Br. in Resp. to Mot. for Summ. J. at 7; Ridglea's Br. in Supp. of Mot. for Partial Summ. J. at 3. Thus, Ridglea must know that its present contention that Lexington is required to show prejudice from the failure to give the required notices before benefitting from that failure is patently without merit. Needless to say, Texas rules and regulations pertaining to entirely different types of insurance requiring that proof of prejudice be shown have no relevance to this case. *See, e.g., Flores v. Allstate Tex. Lloyds Co.*, 278 F.Supp.2d 810, 816 (S.D.Tex.2003).

### B. *Lexington's Non–Manifestation Argument.*

The court is inclined to agree with the contention made by Lexington in its summary judgment papers that the law of Texas is that Lexington would not be liable for hail damage resulting from a hailstorm that occurred during the effective period of its policy unless the damage resulting from the storm manifested itself during the policy period. Apparently, Lexington was inspired to assert non-manifestation as an alternative theory by Ridglea's contention that it did not learn of the hail damage until years after the hailstorm occurred. The court considers this alternative theory to be meritless under the summary judgment record. For reasons previously stated, *supra* at 858–59, the summary judg-

ment evidence indicates that Ridglea could and should have discovered the damage shortly after the hailstorm occurred, certainly before the Lexington policy expired on February 1, 1996. Lexington apparently has recognized the lack of merit of its non-manifestation theory because the theory has been abandoned in the answer Lexington filed after realignment.

C. *Ridglea's Statutory and Common Law Claims.*

For the reasons previously stated, the court concludes that Ridglea has no right to recover benefits under the insurance policy issued by Lexington. Ridglea has not raised an issue that would support recovery of any damages or penalties from Lexington under any of the statutory or common law theories of recovery asserted by Ridglea. As a matter of law, Lexington has conducted itself appropriately and in good faith in response to Ridglea's belated report of loss.

D. *Lexington's Request for Recovery of Attorneys' Fees.*

■ The court has considered Lexington's request for an award of attorneys' fees for having to defend Ridglea's claims under article 21.21 of the Texas Insurance Code. Nothing has been provided that would allow the court to conclude that any significant time has been devoted by Lexington to defense of Ridglea's article 21.21 claims as distinguished from Ridglea's claims for recovery under the policy. The court is satisfied that Lexington has not shown a basis for recovery of attorneys' fees. Therefore, the court is denying Lexington's motion as to that request.

Upon being informed during a conference call between the court and counsel for the parties that the court had determined to grant Lexington's motion for summary judgment as to all but Lexington's claim for attorneys' fees, counsel for Lexington advised the court that Lexington will not pursue that claim if the court renders judgment for Lexington on Ridglea's claims against Lexington.

## V.

### *Order*

For the reasons given above,

The court ORDERS that Ridglea's motion for partial summary judgment be, and is hereby, denied.

The court further ORDERS that Lexington's motion for summary judgment be, and is hereby, granted except as to Lexington's request for recovery of attorneys' fees.

The court further ORDERS that Lexington's request for attorneys' fees be, and is hereby, dismissed without prejudice.

The court further ORDERS that all claims asserted by Ridglea against Lexington be, and are hereby, dismissed.

### *FINAL JUDGMENT*

Consistent with the memorandum opinion and order signed in the above-captioned action on the date of the signing of this final judgment,

The court ORDERS, ADJUDGES, and DECREES that all claims asserted by plaintiff, Ridglea Estate Condominium Association, in the above-captioned action against defendant, Lexington Insurance Company, be, and are hereby, dismissed.

The court further ORDERS, ADJUDGES, and DECREES that the claim of defendant for recovery of attorneys' fees be, and is hereby, dismissed without prejudice.

The court further ORDERS, ADJUDGES, and DECREES that defendant have

and recover from plaintiff cost of court incurred by defendant.